Board of Trust Company Incorporation
No. 7541

THE BEDFORD BANK

v.

STATE OF NEW HAMPSHIRE
BOARD OF TRUST COMPANY INCORPORATION
AMHERST BANK & TRUST COMPANY

October 29, 1976

*Bossie & Kelly (Mr. Robert F. Bossie* orally) for the plaintiff.

*David H. Souter,* attorney general, and *James C. Sargent, Jr.,* assistant attorney general *(Mr. Sargent* orally), for the State and Board of Trust Company Incorporation.

*John A. Melrose,* by brief and orally, for defendant Amherst Bank & Trust Company.

KENISON, C.J.   The plaintiff, Bedford Bank, appeals under RSA 384:1-a (Supp. 1975) and RSA 541:6 the New Hampshire Board of Trust Company Incorporation's denial of the plaintiff's motion for rehearing with respect to the board's decision to grant the branch bank application of the defendant, Amherst Bank & Trust Company. On September 24, 1975, defendant requested the board's authorization under RSA 384-B:2 to establish a branch bank in Bedford, New Hampshire. On January 14, 1976, the New Hampshire Banking Department's field examiner filed

his report, which recommended approval of the application on the condition that there be an infusion of additional equity capital prior to opening the office and that there be no direct increase in the amount of capital invested in fixed assets as a result of the expansion. On March 18, 1976, the board conducted a discretionary hearing pursuant to RSA 384-B:2 III (Supp. 1975). At this hearing, both the Bedford Bank and the Amherst Bank & Trust Company offered testimony and other evidence to the board.

During the middle of May 1976, the president of Amherst Bank & Trust, its counsel and the board exchanged letters regarding whether the bank still wished to establish a branch in Bedford in view of the Amherst Zoning Board's denial of a proposed branch bank by one of Amherst Bank & Trust's competitors, the Souhegan National Bank. One of the principal reasons that Amherst Bank & Trust wished to establish a branch in Bedford was to protect itself from competition from Souhegan National Bank and other banks that were opening up branches in the Bedford area along Route 101. In response to the board's inquiry, the defendant informed the board that its plans were not affected by the Amherst Zoning Board's decision. It still wished to open a branch in Bedford.

On June 18, 1976, the board granted the defendant's application conditioned upon increased equity funding of $167,420. On July 1, 1976, the Bedford Bank moved for a rehearing. On July 8, 1976, the board denied the motion. This appeal followed.

The Bedford Bank argues that the May communications between Amherst Bank and the board constitute procedural irregularities sufficient to justify setting aside the decision of the board. The plaintiff's objection is that the board allowed one party to present evidence after the hearing was held but did not give the opposing party an opportunity to refute that evidence. However, contrary to the plaintiff's contention, the letters complained of contained no substantive evidence relative to the disposition of the defendant's application; they could not have influenced the decision of the board. The failure to inform the plaintiff of these innocuous communications was harmless error. Certain testimony at the hearing made it reasonable for the board to believe that, because the Amherst Zoning Board denied the Souhegan National Bank permission to build a branch bank in the area, the Amherst Bank & Trust would no longer want to establish a branch on Route 101 in Bedford. If the defendant's plans had changed, continued deliberation on the application would be

futile. Rather than speculate, the board simply asked the defendant whether its plans had changed. The defendant answered in the negative. One month later, without any subsequent communication with the defendant, the board granted the application.

The need for confrontation exists when adjudicative facts are in dispute. 1 K. Davis, Administrative Law Treatise § 7.05 (1958). The exchange of letters to which plaintiff objects put no adjudicative fact in dispute and no opportunity to refute the contents of the letters was necessary. We hold that the exchanges were not improper or prejudicial to the plaintiff. We do not hold that all communications between the board and a single party to a branch application controversy are reasonable and proper. There may be circumstances in which such communication would require vacating the order of the board. However, the circumstances of this case warrant no such action. The plaintiff was not prejudiced by any of the board's procedures or lack thereof. Under these circumstances, we need not address plaintiff's contention that the Administrative Procedure Act, RSA ch. 541-A, requires the board to adopt and file rules of practice and that the board's failure to comply with the Act impairs the validity of the board's action.

The Bedford Bank also argues that the board erred in granting the application to the Amherst Bank & Trust. The standard of review over the decisions of the Board of Trust Company Incorporation is set out in RSA 541:13. The board's order must be sustained unless the clear preponderance of the evidence establishes that the order is unjust or unreasonable. *Hanaway v. State,* 116 N.H. 124, 352 A.2d 715 (1976); *Sugar River Sav. Bank v. State,* 115 N.H. 145, 335 A.2d 663 (1975). The board's findings of fact on questions properly before the board are prima facie lawful and reasonable. RSA 541:13; *Hampton Nat'l Bank v. State,* 114 N.H. 38, 314 A.2d 668 (1974).

RSA 384-B:2 IV states: "In making its decision on each application [for a branch bank], the board shall take into consideration the following factors: (a) the convenience, needs and welfare of the communities and the area concerned; (b) the financial history and condition of the bank or banks concerned including the adequacy of its or their capital funds; (c) its or their prospects; (d) the character of the management; and (e) whether or not the effect of granting the application would be to expand the size of the bank and extent of its business beyond limits consistent with adequate and sound banking, the public interest and the preservation of

competition in the field of banking."

Failure to take into account relevant factors is an error of law that requires setting aside an administrative agency's order. *See Boston & Maine R.R. v. State,* 97 N.H. 380, 89 A.2d 764 (1952). However, in this case the board made findings of fact with respect to each of the factors listed in RSA 384-B:2 IV. The board's decision to grant the application was based upon the following conclusions:

1. The convenience, needs and welfare of northern Amherst and Bedford will be served.

2. While the financial history of this relatively new bank shows operating profits only within the last six months, it is believed that management has a program, with the infusion of new capital, to ensure a continuing profitable institution.

3. The character of management, both current and prospective, is deemed adequate.

4. The granting of this application would not expand the size of Amherst Bank and Trust Company beyond limits consistent with adequate and sound banking. Nor would withholding this application greatly affect the prospects of the future profitability of the Bedford Bank. It is the opinion of the Board that this branch will create fair competition.

Considering the evidence, which consisted of the field examiner's report and the record of the hearing, we cannot say that the decision of the board was unjust or unreasonable. RSA 541:13.

*Appeal dismissed.*

All concurred.