Board of Tax and Land Appeals
No. 98-672

APPEAL OF LAND ACQUISITION, L.L.C.

(New Hampshire Board of Tax and Land Appeals)

December 8, 2000

*Cleveland, Waters and Bass, P.A.*, of Concord (*Douglas L. Ingersoll* and *William B. Pribis* on the brief, and *Mr. Ingersoll* orally), for the petitioner.

*Upton, Sanders & Smith*, of Concord (*Barton L. Mayer* on the brief and orally), for the respondent, Town of Hooksett.

DALIANIS, J. The petitioner, Land Acquisition, L.L.C., appeals the declaration by the New Hampshire Board of Tax and Land Appeals (board) that its case had "settled" and the award of attorney's fees to the respondent, the Town of Hooksett. We affirm in part and reverse in part.

The petitioner owns property in Hooksett on which it plans to develop a 372-unit condominium project. In June 1996, the petitioner appealed the respondent's assessment of property taxes to the board. At the board's urging, the parties met to negotiate a settlement of the petitioner's appeal. In July 1997, they entered into an oral settlement agreement.

In November 1997, the respondent informed the board that the parties had settled. On December 3, 1997, the board notified the parties that it considered the case settled and that, unless it received an objection, it would close the case and mark it accordingly. The petitioner objected, stating that "no binding settlement of this case has been reached," and the board rescinded its prior order. The respondent moved to enforce the settlement, to which the petitioner objected, and the board held a hearing on the respondent's motion.

At the hearing, the petitioner did not dispute that the parties had entered into a settlement agreement in July 1997. Rather, the petitioner asserted that the agreement was unenforceable because it was not in writing as required by the board's rules, and because of the respondent's alleged material misrepresentations. The petitioner also asserted that the board lacked jurisdiction to decide whether or not the agreement was enforceable.

The board ruled that it had jurisdiction and the authority to waive its writing requirement. It granted the respondent's motion to enforce the settlement, closing its case and marking it "settled." After granting the respondent's rehearing request, the board also ordered the petitioner to pay the respondent's attorney's fees.

On appeal, the petitioner first asserts that the board exceeded its statutory authority by ruling upon whether the parties' agreement was enforceable. The petitioner argues that the parties' dispute is contractual in nature, and the board has jurisdiction to decide issues of taxation only. We disagree.

"The powers of the board and the rights of taxpayers appearing before the board are entirely statutory and are limited by the terms of the statute." *Appeal of Gillin*, 132 N.H. 311, 313, 564 A.2d 459, 460 (1989) (quotation omitted). The board's subject matter jurisdiction is similarly statutorily defined. *See Appeal of Town of Sunapee*, 126 N.H. 214, 216, 489 A.2d 153, 155 (1985).

In property tax appeals, the board has original concurrent jurisdiction with the superior court "to determine questions relating to taxation *de novo*." RSA 71-B:11 (1991). RSA 71-B:5, I, grants the board the authority "[t]o hear and determine all matters involving questions of taxation properly brought before it." RSA 71-B:5, I (1991). In so doing, the board has the power to "institute its own investigation, or hold hearings, or take such other action as it shall deem necessary." *Id.* The governing statutes thus permit the board to determine questions "relating to" taxation, and settlement of an abatement appeal necessarily "relates to" taxation. Even if not expressly granted by statute, the board has the inherent authority to decide whether a case on its docket is contested or resolved. *Cf. Appeal of Amalgamated Transit Union*, 144 N.H. 325, 327-28, 741 A.2d 66, 69 (1999).

The Administrative Procedure Act also contemplates that administrative bodies, such as the board, will decide matters related to settlement. *See* RSA 541-A:31, V(b) (1997) (board is to "encourage informal disposition" of disputes and may hold prehearing settlement conferences); *see also* RSA 541-A:38 (1997) ("Except to the extent precluded by law, informal settlement of matters by nonadjudicative processes is encouraged.").

The petitioner argues that because the legislature only requires one board member to be an attorney, it "did not intend for the Board to decide issues of contract." "[D]etermin[ing whether] a binding settlement agreement exist[s] . . . [is a] question[] of fact," *Byblos Corp. v. Salem Farm Realty Trust*, 141 N.H. 726, 728-29, 692 A.2d 514, 516 (1997), and resolving factual disputes is within the board's purview. *See* RSA 76:16-a, V (1991); *Appeal of Andrews*, 136 N.H. 61, 64, 611 A.2d 632, 634 (1992). The petitioner's assertion contravenes "our long history of respect for and deference to decisions by . . . administrative boards comprised of non-attorney members." *Appeal of Gamas*, 138 N.H. 487, 492, 642 A.2d 925, 928 (1994).

■ The petitioner next asserts that the board lacked jurisdiction to decide whether or not an agreement existed. The petitioner argues that any dispute about the formation and existence of an agreement must be heard, in the first instance, by the superior court. The petitioner misapprehends the relevant statutory scheme. The board has jurisdiction to determine the formation and existence of an agreement; the superior court has jurisdiction to enforce it. *See* RSA 71-B:13 (1991). Moreover, the petitioner's construction of the board's jurisdictional reach would impermissibly hinder its ability to manage its own calendar. The board must have the power to clear settled cases from its docket. "No principle of administrative law is more firmly established than that of agency control of its own calendar." *Appeal of Morin*, 140 N.H. 515, 521, 669 A.2d 207, 211 (1996) (Horton, J., dissenting).

The petitioner next argues that the board exceeded its grant of authority by actually enforcing the parties' agreement. Although the respondent moved to "enforce" the agreement, the board did not do so. It did not rule on the parties' rights and responsibilities, or grant any relief under the agreement, but merely marked the case as "settled" on its docket.

■ The petitioner contends also that the board lacked jurisdiction to rule on a settlement agreement that concerned tax years other than the tax year which was the subject of the petitioner's appeal. The record shows, however, that the board recognized that it had no jurisdiction to consider the abatement of taxes for any year other than that which was the subject of the petitioner's appeal. But, because the parties chose to include other tax years as an integral part of their settlement agreement, the board had to review the entire agreement to determine if the parties settled the petitioner's appeal.

The petitioner next argues that the board could not rule on the parties' agreement because it was not in writing. New Hampshire Administrative Rules, Tax 201.23(b) (1993) provides that "[a]ll settlement agreements, except those made on the record or recited in an order, shall: (1) Be in writing . . . ; and (2) Be signed by both parties or their attorneys or agents." The petitioner contends that this regulation deprives the board of any authority to rule on an oral settlement agreement. We disagree.

> [A]n agency's interpretation of its regulations is to be accorded great deference. Nevertheless, our deference to an agency's interpretation of its own regulations is not total. We still must examine the agency's interpretation to

determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve.

*Petition of Pelletier*, 125 N.H. 565, 569, 484 A.2d 1119, 1121 (1984) (citation and quotation omitted).

■ Two of the board's regulations demonstrate its authority to rule on an oral settlement agreement. First, Rule 201.23(e) provides that if the parties have settled an appeal, but have not filed a written agreement with the board, "the board shall notify the parties that unless a party files an objection within 10 days, the docket will be marked: 'case settled; no further action, no costs.'" This regulation thus permits the board to rule, as it did here, that a case has settled in the absence of a written agreement.

Second, the board has reserved the right to waive its rules. *See* N.H. ADMIN. RULES, Tax 103.02(a), (b) (1993); *see also* RSA 541-A:22, IV (1997); *Daniel v. B & J Realty*, 134 N.H. 174, 176, 589 A.2d 998, 999 (1991). The petitioner asserts that the board can only waive its rules upon request. We disagree. The board's regulations do not condition a waiver upon a request. *See* N.H. ADMIN. RULES, Tax 103.02(a).

The petitioner asserts also that the board can waive its writing requirement only upon a showing of some particular fact, such as part performance. The board's regulations do not require such a factual showing. The petitioner's reliance on cases decided under the statute of frauds is misplaced. We therefore uphold the board's interpretation of its regulations and conclude that it had authority to rule on the parties' oral agreement.

The petitioner next argues that the board erred in ruling that the parties' agreement was enforceable because the respondent allegedly misrepresented material facts. The board's factual findings on this issue are supported by the record.

"Our standard of review for appeals from the board provides that the petitioner has the burden of showing that the board's decision is clearly unreasonable or unlawful, and all findings of the board upon all questions of fact shall be deemed to be prima facie lawful and reasonable." *Appeal of Reid*, 143 N.H. 246, 248, 722 A.2d 489, 491 (1999) (quotation omitted). "Our task is not to determine whether we would have found differently than did the board, or to re-weigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Appeal of Stetson*, 138 N.H. 293, 296, 639 A.2d 245, 248 (1994) (citations omitted).

The petitioner asserts that during the settlement negotiations, the respondent represented that the planning board's approval for the condominium project, given to the petitioner's predecessor in title in 1988, "remained valid and in full force and effect." The petitioner asserts that the respondent also represented that "building permits would be issued by the [respondent] upon renewal of all applicable state permits." The petitioner claims that it agreed to settle its appeal based upon these representations.

The petitioner contends that these representations were false because, after the parties had settled the appeal, the petitioner "was told by more than one person on behalf of the [respondent] . . . that Planning Board action and approval *would* be necessary before building permits would issue for the development of the property."

The board found no material misrepresentations of fact. Specifically, the board found that the respondent's representations were true when the parties entered into their agreement in July 1997. The board further found that the respondent never promised that building permits would issue, only that they would issue once the petitioner renewed its State permits. The board further found that the petitioner did not renew its State permits and, thus, could not "complain about the [respondent]'s failure to issue the building permit[s]."

█ The record amply supports these findings. At the board hearing, the planning board chairman testified that the 1988 site approval was valid and still in effect. The planning board chairman also testified that he told the petitioner that it need not return to the planning board for any further action, but would be entitled to building permits once it renewed its State permits. Further, the code enforcement officer testified that he could not issue building permits until the petitioner renewed its State permits. The petitioner conceded that it had not yet renewed its State permits. In light of this testimony, we decline to rule that the board's findings are clearly unreasonable or unlawful. *See Appeal of Reid*, 143 N.H. at 248, 722 A.2d at 491.

Finally, the petitioner argues that the board erred when it awarded the respondent attorney's fees. We agree.

█ While the board is authorized to award attorney's fees in challenges to department of revenue assessments, *see* RSA 21-J:28-b, VI (Supp. 1999), it is not authorized to award attorney's fees in property tax abatement appeals. The applicable statute permits the board to award "costs" only. *See* RSA 71-B:9 (Supp. 1999).

We disagree with the respondent's assertion that the board has inherent authority to award attorney's fees. While a court may have such inherent authority, *see Emerson v. Town of Stratford*, 139 N.H. 629, 631, 660 A.2d 1118, 1120 (1995), the same is not true for a quasi-judicial administrative body. The remedial authority of such a body is expressly limited by statute. *See Appeal of Somersworth School Dist.*, 142 N.H. 837, 841, 713 A.2d 386, 389 (1998).

The petitioner's remaining arguments lack merit and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; reversed in part.*

BRODERICK and NADEAU, JJ., concurred; HORTON, J., retired, and GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.