Public Employee Labor Relations Board
No. 2002-341

## APPEAL OF CITY OF MANCHESTER

(New Hampshire Public Employee Labor Relations Board)

Argued: February 6, 2003
Opinion Issued: April 4, 2003

*City Solicitor's Office*, of Manchester (*Daniel D. Muller, Jr.* on the brief and orally), for the petitioner.

*Dumont, Morris & Burke*, of Boston, Massachusetts (*John D. Burke* on the brief and orally), for the respondent, Teamsters Local Union No. 633 of New Hampshire.

*Stephen J. Judge*, acting attorney general (*Michael K. Brown*, senior assistant attorney general, on the brief and orally), for the State, as *amicus curiae*.

DALIANIS, J. The City of Manchester (City) appeals a ruling of the New Hampshire Public Employee Labor Relations Board (PELRB) granting the Teamsters Local Union No. 633 of New Hampshire's (Union) petition for certification. On appeal, the City argues that: (1) the Union's petition was filed too close to the City's budget submission date to be entertained under New Hampshire Administrative Rules, Pub 301.01 (Rule 301.01); and (2) the PELRB, not the City, is required to pay for the preparation of the transcript for inclusion in the record on appeal. We affirm.

On October 15, 2001, the Union filed its petition for certification of a bargaining unit consisting of certain employees of the City Public Library. At the time, the bargaining unit had no certified representative. The City's budget submission date was March 31, 2002. On November 29, 2001, the PELRB's hearing officer conducted a hearing on the petition for certification. The City and the Union stipulated to essentially all substantive issues, including the composition of the bargaining unit. The City objected to the petition arguing, in part, that it was untimely filed under Rule 301.01(b) because the certification election would be too close to the City's budget submission date.

On January 23, 2002, the hearing officer granted the Union's petition, noting that any delay in the election was due in part to the actions of the parties. The hearing officer further held, however, that due to the Union's failure to provide the proper notice of intent to bargain under RSA 273-A:3, II(a) (1999), the City could not be compelled to negotiate "cost items." Thus, the only result of the hearing officer's decision, assuming that the bargaining unit voted for representation, would be that the City would be required to negotiate non-cost items with the Union. Nonetheless, the City filed a request for review of the hearing officer's decision and two motions to stay with the PELRB. On March 12, 2002, the PELRB denied the City's request for review and motions to stay. The election was held on March 25, 2002, and the PELRB issued a certificate of representation for the bargaining unit on April 4, 2002. The City filed an objection to the conduct of the election on or about March 29, 2002, and a motion for

reconsideration on April 9, 2002. The PELRB denied each on May 6, 2002. This appeal followed.

When reviewing a decision of the PELRB, "we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of State of N.H.*, 147 N.H. 106, 108 (2001) (quotation omitted).

The first issue on appeal is the interpretation of two subsections of Rule 301.01, which govern the timing for the filing of certification petitions.

Rule 301.01, states, in pertinent part:

> (a) A petition for certification as the exclusive representative of a bargaining unit having no certified representative may be filed at any time. A petition for certification as the exclusive representative of a bargaining unit for which a collective bargaining agreement constituting a bar to election under RSA 273-A:11, I (b) presently exists shall be filed no more than 210 days and no less than 150 days prior to the budget submission date of the affected public employer in the year that agreement expires, notwithstanding any provisions in the agreement for extension or renewal.

> (b) Any petition filed less than 150 days prior to the budget submission date of the affected public employer shall be accompanied by an explanation of why the petition could not have been filed sooner. The board shall refuse to entertain any petition filed so close to the budget submission date of the affected employer that the board cannot reasonably conduct the election called for in the petition within 120 days of the budget submission date.

N.H. ADMIN RULES, Pub 301.01.

In its order affirming the hearing officer's ruling, the PELRB found, among other things, that the Union's petition was properly granted because under Rule 301.01(a), it was "possible to hold a bargaining agent election within a month or two of an actual budget submission date, with the Union being certified thereafter but having missed the requisite notice under RSA 273-A:3, II(a) . . . ."

On appeal, the City argues that Rule 301.01(b) is an exception to the general rule contained in Rule 301.01(a), which permits a petition to be filed "at any time" if the bargaining unit has no certified representative. Under the City's interpretation of Rule 301.01(b), the PELRB cannot entertain any petition that is filed so close to the budget submission date

that the board cannot reasonably conduct the election at least 120 days prior to the budget submission date, regardless of whether the bargaining unit already has a certified representative. Thus, the City argues that the board misinterpreted its rules by entertaining the Union's petition for which an election could not be held at least 120 days prior to March 31.

> An agency's interpretation of its regulations is to be accorded great deference. Nevertheless, our deference to an agency's interpretation of its own regulations is not total. We still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve.

*Appeal of Land Acquisition*, 145 N.H. 492, 495-96 (2000) (quotation and brackets omitted).

To the extent that the PELRB held that Rule 301.01(b) only applies when the bargaining unit already has a certified representative, we agree. The only statutory provision regarding the timing of an election is RSA 273-A:11, I(b), which states:

> I. Public employers shall extend the following rights to the exclusive representative of a bargaining unit . . . :

> (b) The right to represent the bargaining unit exclusively and without challenge during the term of the collective bargaining agreement. Notwithstanding the foregoing, an election may be held not more than 180 nor less than 120 days prior to the budget submission date in the year such collective bargaining agreement shall expire.

This provision, known as the "contract bar rule," plainly deals exclusively with situations where the bargaining unit already has a certified representative. There is no analogous provision for situations where the bargaining unit has no certified representative at the time the petition is filed.

The PELRB regulations must be interpreted with this statutory scheme in mind. *See Land Acquisition*, 145 N.H. at 495-96. The first sentence of Rule 301.01(a) permits a filing "at any time" if the bargaining unit has no certified representative, reflecting the lack of statutory time limits upon an election for such a certification. The remainder of Rule 301.01(a) references RSA 273-A:11, I(b), and sets a time frame for the filing of petitions where the bargaining unit has a certified representative in order to implement the contract bar rule. Rule 301.01(b), while referencing "any petition," follows from the second part of Rule 301.01(a), and further

implements the statutory scheme. Thus, any petition, where the bargaining unit has a certified representative, filed within 150 days of the budget submission date must be accompanied by an explanation of the delay such that the board can ensure that an election may be held within the statutory period. N.H. ADMIN RULES, Pub 301.01(b). Finally, pursuant to the final part of Rule 301.01(b), in accordance with RSA 273-A:11, I(b), the PELRB is precluded from entertaining those petitions where a certified representative exists that would violate the contract bar rule by resulting in an election being held within 120 days of the budget submission date.

█ Read in the context of the statutory scheme, Rule 301.01 establishes that the time constraints contained within Rule 301.01(b) apply only when the bargaining unit has a certified representative. Moreover, under the City's interpretation of the rule, if the bargaining unit has no certified representative then the petition for certification could not, in fact, be filed "at any time," as Rule 301.01(a) allows. Instead, such a petition would be subject to the time constraints contained within Rule 301.01(b). This construction of the rule would effectively eliminate the first sentence of Rule 301.01(a). We will not interpret the rule in such a way as to render a significant portion of it meaningless. *Cf. N.H. Dep't of Resources and Economic Dev. v. Dow*, 148 N.H. 60, 64 (2002) (interpreting statutory language). Thus, petitions for certification for bargaining units without a certified representative may be filed at any time without regard to the time limits contained within the contract bar rule and Rule 301.01(b). Accordingly, the PELRB properly considered the Union's petition for certification.

Because we hold that Rule 301.01(b) does not govern petitions for certification where the bargaining unit has no certified representative, we need not address the City's arguments regarding the application of Rule 301.01(b) to the Union's petition.

Finally, the City argues that the PELRB must bear the initial cost of the preparation of the transcript of the proceedings below for inclusion in the record on appeal. Upon our acceptance of this appeal, we ordered the board to file a certified copy of the record. At the time of the order, the PELRB had a written policy under which the moving party had to bear the burden and cost of preparing a transcript for inclusion in the record. The PELRB did not follow the rule-making procedures established by RSA chapter 541-A in adopting this policy.

█ The City argues that the PELRB's policy is not binding upon it. We agree. We are not persuaded by the State's argument that the policy was a properly adopted "procedure" pursuant to RSA 273-A:2. Under RSA 273-

A:2, VI, the PELRB may "make, amend and rescind in the manner prescribed by RSA 541-A such rules, establish such procedures and conduct such studies as may be necessary to carry out the provisions of this chapter." A "rule" is defined as

> each regulation, standard, or other statement of general applicability adopted by an agency to (a) implement, interpret, or make specific a statute enforced or administered by such agency or (b) prescribe or interpret an agency policy, *procedure or practice requirement binding on persons outside the agency,* whether members of the general public or personnel in other agencies.

RSA 541-A:1, XV (emphasis added). Rules are valid only if adopted in accordance with the procedures prescribed by RSA chapter 541-A. *See Asmussen v. Comm'r, N.H. Dep't. of Safety,* 145 N.H. 578, 592-93 (2000). Thus, because the PELRB's policy created a procedure binding upon persons outside the agency, the board was required to follow the procedural requirements for rule-making. Because the PELRB did not do so, the policy cannot bind the City.

The City further argues that the Supreme Court Rules governing the procedure for appeals from administrative agencies do not require the moving party to pay for the transcription. In support of its argument, the City points to Rule 10, "Appeal from Administrative Agency." SUP. CT. R. 10. The rule states, in pertinent part:

> (2) The order sought to be reviewed or enforced, the findings and rulings, or the report on which the order is based, and the pleadings, evidence, and proceedings before the agency shall constitute the record on appeal.

> (3) The administrative agency, complying with the provisions of . rule 6(2) as to form, shall file the record with the clerk of the supreme court as early as possible within 60 days after it has received the supreme court's order of notice. The original papers in the agency proceeding or certified copies may be filed.

*Id.* The City argues that because the agency, not the moving party, is required to file the record with the court, the agency must also bear the reasonable cost of preparing the transcript as part of the record. We disagree. Rule 10 requires the agency to file the record, not to prepare transcripts that are not already contained therein. Rule 10 is silent as to who must bear the burden of the cost of preparing the transcript.

In *Petition of Dunlap*, 134 N.H. 533 (1991), we addressed this same issue in the context of a petition for certiorari review of an administrative agency order. There, while Rule 10 applied to the petition, we did not rely upon that rule in making our determination. *Id.* at 547-48. Rather, we sought to determine whether the moving party was required initially to bear the burden of the full, reasonable costs of transcription under former RSA 541-A:16 (Supp. 1990)(current version at RSA 541-A:31), or whether the costs were to be limited to the fees specified in RSA 541:11 (1997). RSA 541:11 did not directly apply because the petition was not brought as a RSA chapter 541 appeal, but rather as a petition for a writ of certiorari.

█ The present appeal, however, has been brought pursuant to RSA chapter 541, and thus we must determine whether RSA 541:11 applies. In matters of statutory interpretation, "this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *K & J Assoc. v. City of Lebanon*, 142 N.H. 331, 333 (1997) (quotation omitted). We first look to the statutory language, and whenever possible construe that language according to its plain and ordinary meaning. *See Appeal of Naswa Motor Inn*, 144 N.H. 89, 90 (1999). RSA 541:11, enacted in 1915 and not since substantively amended, states:

> The commission shall collect from the party making the appeal a fee of ten cents per folio of one hundred words for the copy of the record and such testimony and exhibits as shall be transferred, and five cents per folio for manifold copies, and shall not be required to certify the record upon any such appeal, nor shall said appeal be considered, until the fees for copies have been paid.

The statute refers only to fees for making copies of the record, not for the cost of transcription. By its plain meaning, the statute requires that the moving party pay the agency for copies of the preexisting record. Here, the contested cost is for the preparation of transcripts, not copies thereof. Thus, RSA 541:11 does not govern the issue before us. We express no opinion as to the applicability of this statute in general.

█ The State argues that we should extend our holding in *Dunlap* and apply RSA 541-A:31, VII to RSA chapter 541 appeals. RSA 541-A:31, VII requires a party requesting a transcript to pay "all reasonable costs for such transcription." In *Dunlap*, we applied former RSA 541-A:16 by analogy to certiorari review of administrative agencies and required the moving party to initially bear the full, reasonable cost of the transcription. *Dunlap*, 134 N.H. at 548-49. In doing so, we recognized that the legislature has expressed its desire that "in a substantial number of State agency

matters, the full reasonable costs of transcription be borne by the requesting party." *Id.* at 548. Indeed, this court has expressed a similar view. Supreme Court Rule 15(2) requires the moving party to pay, in the first instance, the cost of transcription in other types of appeal. Thus, in nearly every appeal before this court, the moving party is required to initially bear the cost of the preparation of the transcript. We find no basis to limit this practice to all appeals other than those brought under RSA chapter 541. Accordingly, we extend our holding in *Dunlap* to RSA chapter 541 appeals and require the moving party to initially bear the full, reasonable cost of preparing the transcript for inclusion within the record. We note that the prevailing party may be able to recover transcription costs under Supreme Court Rule 23.

Thus, the City, as the moving party, must initially bear the full, reasonable cost of preparing the transcript. RSA 541-A:31, VII, however, does not require the City to actually arrange for the transcription. Because the PELRB required the City to arrange for the preparation of the transcript, the City argues that its cost in doing so may have exceeded the cost that the PELRB would have incurred. Consequently, the City argues that "there could still be an issue of reimbursement." However, the City provides no support for this argument, so we have no reason to conclude that the cost that the City incurred in arranging for the transcription exceeded that which the PELRB would have incurred. Thus, assuming without deciding that reimbursement would be ordered, we have no basis upon which to order such reimbursement.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.